UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
          v.                   )     CRIMINAL ACTION
                               )     NO. 04-1793-CBS
DWAYNE BRANCO,                 )
          Defendant,           )
_____)
```

             **MEMORANDUM OF PROBABLE CAUSE AND ORDER ON**
                **THE GOVERNMENT'S MOTION FOR DETENTION**
                             **July 19, 2004**

**SWARTWOOD, M.J.**

   I.   Nature Of The Offense And The Government's Motion

   On June 22, 2004, a Criminal Complaint was filed charging Dwayne Branco ("Mr. Branco") with being a felon in possession of a firearm that had been shipped or transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

   At Mr. Branco's initial appearance in connection with this Criminal Complaint on June 24, 2004, he was advised of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for detention in accordance with 18 U.S.C. §§ 3142(f)(1)(A)(Mr. Branco has been charged with a crime of violence) and (f)(2)(A) (risk of flight).

   On June 30, 2004, a consolidated probable cause/detention hearing was held and at that hearing, Stephanie Schaffer, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF"), testified on behalf of the Government and was cross-examined by Mr. Branco's counsel.

## II. Findings of Fact

1. On July 29, 2003, a confidential witness ("CW") called Mr. Branco in the presence of ATF Special Agent Brendan Hickey and made arrangements with Mr. Branco for the purchase of a .380 caliber pistol that Mr. Branco had previously shown the CW and told the CW he would sell for $300.  Govt. Ex. 1.

2. On July 29, 2003, surveilling law enforcement officers observed Mr. Branco leave his residence and enter the CW's vehicle, which was then followed to a parking lot in New Bedford, Massachusetts. Mr. Branco then exited the vehicle, walked to a nearby residence, returned to the CW's vehicle and handed the CW a .380 caliber pistol.  The CW examined the pistol and held it up above the dashboard to enable surveilling law enforcement officials to record it on video tape.  The CW then gave Mr. Branco $300 and exited the CW's vehicle.  Id.

3. The following is a relevant summary of Mr. Branco's criminal record:

| **DATE OF OFFENSE** | **OFFENSE CHARGED** | **DISPOSITION** |
|---|---|---|
| 10/18/96 | Violation of Abuse Prevention Act | Continued without a finding to 1/6/98; on 9/4/97, Mr. Branco was violated and given a 10 day House of Correction sentence which was suspended to 9/4/98; but on 3/11/98, he was committed to serve that sentence. |
| 19/21/96 | Second violation of Abuse Prevention Act | Same disposition. |
| 12/18/96 | Assault and battery with a dangerous weapon | Same disposition. |
| 12/18/96 | Assault and battery | Same disposition. |
| 12/19/96 | Malicious destruction of property | Same disposition. |
| 11/6/00 | Possession of a Class B controlled substance | 7/17/01 guilty, 18 months suspended sentence |
| 11/28/00 | Malicious destruction of property | Same disposition |

    4.   The .380 caliber pistol was manufactured outside of the Commonwealth of Massachusetts and therefore, traveled in interstate commerce. Id.

    5.   On March 1, 2004, the .380 caliber pistol sold by Mr. Branco to the CW was successfully test-fired by the Boston Police Department's Ballistic Unit.

    6.   On February 20, 2004, DEA Special Agent Hickey interviewed

Mr. Branco and after advising him of his Miranda rights and showing him the video of the .380 caliber pistol in the hands of the CW, Mr. Branco admitted that he had sold the .380 caliber pistol to the CW.

### III.   Probable Cause

The CW was overheard by a DEA Special Agent making arrangements with Mr. Branco for the purchase of a .380 caliber pistol. Law enforcement officials surveilled the transaction and were able to video tape the .380 caliber pistol in the hands of the CW during the transaction. Mr. Branco later admitted selling the pistol to the CW. Mr. Branco has been convicted of state offenses which would be felony criminal offenses under federal law and the firearm traveled in interstate commerce. Therefore, I find probable cause for the offense charged in this Complaint.

### IV.   Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of

the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).  The Supreme Court, in <u>United States v. Salerno</u>, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>Id.</u> at 755, 107 S.Ct. at 2105.  For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. <u>See</u> 18 U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). <u>See</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

   The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. <u>See</u> 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant

will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community

6

and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. United States v. Jessup, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an

offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### V. Discussion of Whether Detention is Warranted

#### A. Mr. Branco's History and Characteristics

Mr. Branco was born on May 29, 1973, in East Taunton, Massachusetts and lived in Southeastern, Massachusetts until he was approximately twenty-eight years of age, when he moved to Lathonia, Georgia where he remained from 2001 to 2003. Thereafter, Mr. Branco returned to Southeastern, Massachusetts, where he resided with his mother.

Mr. Branco has not been married, but has two children who live in Southeastern, Massachusetts.

Mr. Branco's father is deceased and his mother, with whom he has recently lived, lives in East Freetown, Massachusetts. Mr. Branco has a brother who resides in Florida and another brother and sister who live in East Freetown, Massachusetts.

Mr. Branco most recently was employed by a demolition company and prior to that, worked for a short period of time for a fence company in West Bridgewater, Massachusetts and another company in Taunton, Massachusetts. While in Geogia between 2001 and 2003, Mr. Branco worked for only four months.

I have previously described Mr. Branco's criminal record. In addition to that record, civil abuse prevention restraining orders

were issued against him in 1996, 1997 and 2000.  As Mr. Branco's criminal record reflects, he has been charged and convicted, on two separate occasions, for violating one of those abuse prevention orders.

      B.  <u>Nature of the Offense; Weight of the Evidence; Government's Burden; Nature and Seriousness of Danger Posed By Mr. Branco's Release; and Risk of Flight</u>

         1.  <u>Nature of the Offense</u>

Mr. Branco is charged with being a felon in possession of a firearm.  If he is found guilty of this offense, he may be facing a maximum sentence of ten years.

         2.  <u>Weight of the Evidence</u>

Bearing in mind that Mr. Branco is presumed innocent, the Court must nevertheless consider the weight of the evidence against him. Mr. Branco has admitted being in possession of a .380 caliber pistol and selling that pistol to a CW.  Additionally, law enforcement agents heard arrangements being made for that transaction, surveilled the transaction and video taped the .380 caliber pistol in the possession of the CW during the transaction.  Therefore, I

find that the weight of the evidence against Mr. Branco is overwhelming.

### 3. Government's Burden

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(2)(A). The Government must prove that there are no conditions or combination of conditions that would reasonably assure the safety of the community if Mr. Branco were released and the appearance of Mr. Branco as required.

The Government's burden of proof is by:

1. *Clear and convincing evidence* that Mr. Branco, if released, would pose a serious danger to any person or the community, or

2. A *preponderance of the evidence* that Mr. Branco, if released, would not appear as required.

### 4. Whether Mr. Branco Poses A Danger to the Community

Mr. Branco has a record which includes convictions for violation of the Abuse Prevention Act, assault and battery with a dangerous weapon, assault and battery, malicious destruction of property (two separate offenses), and possession of a Class B controlled substance. I have previously found that the crime of being a felon in possession of a firearm is a crime of violence which justifies detention pursuant to 18 U.S.C. § 3142(f)(1)(A). The evidence against Mr. Branco in this case is overwhelming. Considering the totality of these circumstances, including Mr.

Branco's prior record which contains crimes of violence and possession of narcotic drugs, I find by clear and convincing evidence that Mr. Branco poses a danger to the community and that there are no conditions or combination of conditions that will assure the safety of any person or persons in the community if he were released.

### 5. Whether Mr. Branco Poses a Risk of Flight

As a result of Mr. Branco's criminal record, I find that there is a reasonable likelihood that if he is convicted of the offense charged in this Complaint, he could be facing a substantial period of incarceration.  Since Mr. Branco has not served any lengthy periods of incarceration as a result of his prior state convictions, I conclude that this fact alone may justify a finding that Mr. Branco poses a risk of flight especially since he obviously has contacts in the State of Georgia.  I make this finding even though Mr. Branco has family ties to Southeastern, Massachusetts. Therefore, I find by a preponderance of the evidence that Mr. Branco poses a risk of flight and that there are no conditions or combination of conditions that can be imposed to assure his appearance in this Court as required.

### V.  Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.   That Mr. Branco be committed to the custody of the Attorney General, or his designated representative, for confinement

in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

    2.   That Mr. Branco be afforded a reasonable opportunity for private consultation with counsel; and

    3.   On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Branco is detained and confined shall deliver Mr. Branco to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

 

/s/Chales B. Swartwood, III
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE